IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| SUSAN ROTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:18-cv-00141 |
| | ) | |
| WINCHESTER MEDICAL CENTER, INC., | ) | By: Elizabeth K. Dillon |
| and VALLEY HEALTH SYSTEM, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In January 2018, Theodore Strausbaugh fell, hit his head, and died after being admitted to Winchester Medical Center, Inc. (WMC). This is a wrongful death action brought by Susan Roth, one of Mr. Strausbaugh's surviving daughters and administrator of his estate, against defendants WMC and Valley Health System. Defendants moved to dismiss, and the court took the motion under advisement after a hearing. (Dkt. No. 23.) For the reasons stated below, defendants' motion will be GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

**A. Complaint Allegations[1]**

Mr. Strausbaugh was admitted to WMC on December 27, 2017, for treatment of a bone infection that resulted from diabetes complications and an ingrown toenail. Upon admission, WMC staff deemed Mr. Strausbaugh a fall risk. As a result, the nursing plan called for placement of a yellow fall risk sign; anti-slip slippers; a fall-risk arm band; application of a bed exit alarm if Mr. Strausbaugh was confused; consideration of moving the patient closer to the nurse's station; and remaining with Mr. Strausbaugh during toileting and using assistive devices and a bedside commode where appropriate.

---

[1] These allegations are accepted as true for purposes of this motion.

On January 5, 2018, Mr. Strausbaugh underwent a partial left toe amputation and endarterectomy (removal of artery blockage). Following the surgery, Mr. Strausbaugh's care plan was updated and a new fall-risk assessment was performed using the Johns Hopkins Fall Risk Assessment (JHFRA), which resulted in a score greater than 13, indicating a high fall risk. Mr. Strausbaugh was considered a high fall risk because he just had a partial amputation of his left big toe, resulting in an unsteady gait; he complained on multiple occasions of shortness of breath; he had a prior medical history of atrial fibrillation; he had diabetic neuropathy, which lessened the sensation in his feet; and he was connected to three medical devices, including a cardiac rhythm monitor, IV, oxygens, and an orthopedic surgical boot.

On January 8, 2018, Mr. Strausbaugh was being attended to by Nurse Katera Stevens. Nurse Stevens assisted Mr. Strausbaugh off of the toilet, and then began arranging bed linens. While arranging bed linens, Mr. Strausbaugh collapsed on the floor, hitting his head. The injury was traumatic and severe, resulting in cerebral hemorrhage. The injury caused an increase in Mr. Strausbaugh's intracranial pressure. After the fall, Nurse Stevens noted that Mr. Strausbaugh was unresponsive and pale, with no palpable carotid pulse, despite rhythm strips indicating the contrary. The code team was alerted, chest compressions were administered, and a bag mask was applied. The attending physician ordered a CT without contrast, which was conducted between 2:14 and 2:22 p.m. It demonstrated a large elongated skull fracture and a large amount of traumatic subarachnoid hemorrhage. Mr. Strausbaugh was declared dead at 2:45 p.m. The medical examiner's report lists "blunt force trauma to the head" as the cause of Mr. Strausbaugh's death.

## B. Procedural History

Roth brings a claim against defendants for the individual negligence of their employee, Katera Stevens, RN, for her failure to provide any assistance or supervision to Mr. Strausbaugh. Roth also brings a claim of corporate negligence against defendants for understaffing WMC at the expense of patient safety and leaving Nurse Stevens with more tasks than she could handle. Roth requests compensatory and punitive damages.

In their motion to dismiss, defendants argued that Roth failed to state a claim for which relief can be granted under the following theories: (1) apparent agency; (2) negligent staffing; (3) negligent training; (4) negligent supervision; (5) negligent hiring and negligent retention; and (6) failure to implement or enforce adequate policies. Defendants also argued that Roth failed to alleged sufficient facts to support her claim for punitive damages. Finally, defendants asserted that Roth's claims are subsumed by Virginia's Medical Malpractice Act (VMMA) because the alleged actions or inactions upon which Roth's claims are based occurred during the provision of health care to Mr. Strausbaugh, and as a result, Roth's claims are subject to the statutory cap on damages.

At the motion's hearing, the motion to dismiss Roth's claim for punitive damages was withdrawn without prejudice. (Dkt. No. 23.) Roth's counsel advised that she was no longer pursuing any claims under an apparent agency theory, rendering that issue moot. Roth also withdrew, without prejudice, her negligent hiring and negligent retention allegations. Finally, the court denied without prejudice the request for a ruling that Roth's claims are subsumed within the VMMA, finding that such relief is not appropriately granted on a motion to dismiss. The court took the remaining issues under advisement, and they are addressed below.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[2] for failure to state a claim upon which relief may be granted, a court must determine whether the factual allegations in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009). When considering a 12(b)(6) motion, a court must accept all of the complaint's factual allegations as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012).

### B. Negligent Staffing

The parties agree that a cause of action for negligence under Virginia law can be based upon an allegation of inadequate staffing. *See Alcoy v. Valley Nursing Homes, Inc.*, 630 S.E. 2d 301, 304 (Va. 2006) (finding a claim for inadequate staffing not covered by the VMMA). Roth makes several detailed allegations regarding the staffing levels at WMC and how it contributed to her father's death. (*See* Compl. ¶¶ 29, 32–34, 36–42.) For example, Roth alleges that defendants' "goal in operating the hospital was to maximize profit," which "creates a financial incentive to hire staff at the lowest cost

---

[2] Defendants styled their motion as a "demurrer" under Virginia law, but the Federal Rules of Civil Procedure apply in federal court when the court sits in diversity. *See Weaver, Bennett & Bland v. Speedy Bucks, Inc.*, 162 F. Supp. 2d 448, 452 (W.D.N.C. 2001). The court will therefore treat this motion as a motion to dismiss under Rule 12(b)(6).

possible" and "leads to woefully inadequate staffing, and poor care quality," (Compl. ¶ 29); that defendants "owed Mr. Strausbaugh a duty to exercise that degree of skill and diligence practiced by a reasonably prudent medical corporation operating a hospital in the Commonwealth of Virginia," (*id.* ¶ 36); that defendants "understaffed WMC, resulting in insufficient staff to adequately care for all patients, including Mr. Strausbaugh," (*id.* ¶ 39); that as "a direct and proximate result of Defendants' negligence, Nurse Stevens was overworked. She was attempting to handle too many tasks at the same time, including turning her attention to the bed when her focus should have been on Mr. Strausbaugh, and neglected to provide the necessary supervision and assistance to Mr. Strausbaugh, resulting in his fall," (*id.* ¶ 41); and as "a direct and proximate result of Defendants' negligence, Mr. Strausbaugh hit his head and suffered a large skull fracture and intracranial hemorrhage," (*id.* ¶ 42.) These and other allegations are sufficient to state a plausible negligence claim. *See Talley v. Danek Med., Inc.*, 179 F.3d 154, 157–58 (4th Cir. 1999) (stating that the essential elements of a negligence claim in Virginia are (1) the identification of a legal duty of the defendant to the plaintiff, (2) a breach of that duty, and (3) injury to the plaintiff proximately caused by the breach).

**C. Negligent Training and Supervision**

The parties agree that claims based on negligent supervision or negligent training are not cognizable under Virginia law. *See Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E. 2d 751, 753–54 (Va. 1988). Roth therefore agrees to withdraw these claims, but only if the court rules that the VMMA does not apply to her claims. If the court rules that plaintiff's claims are subsumed by the VMMA, then the parties' expert witnesses will establish the standard of care, which could include a duty to properly train and supervise its employees. The court agrees. *See Elliot v. Cook*, No. 23636, 2002 WL 31943891, at *2 (Va. Cir. Jan. 7, 2002) ("The standard of care applicable to a

hospital may very well include the hiring, retention and supervision of its employees. I cannot rule as a matter of law that in a medical malpractice action a hospital cannot be held liable for the negligent hiring, retention and supervision of its employees.").

Because the court is declining to rule on the VMMA issue at this time, the court will deny defendants' motion to dismiss Roth's negligent training and supervision claims.

**D. Failure to Implement or Enforce Adequate Policies**

Defendants argue that there is no valid cause of action under Virginia law for failing to implement or enforce rules, policies, or procedures. *See Pullen v. Nickens*, 310 S.E. 2d 452, 456 (Va. 1983) ("'a person cannot, by the adoption of private rules, fix the standard of his duty to others.'") (quoting *Va. Ry. & Power Co. v. Godsey*, 83 S.E. 1072, 1073 (1915)). Roth agrees, but argues that she may support her negligence claim by citing defendants' policies and procedures. *See Riverside Hosp., Inc. v. Johnson*, 636 S.E. 2d 416, 421–22 (Va. 2006) (upholding admission of orientation instructions and nurse training materials where materials would be "corroborative" of the expert's standard of care testimony, and would not be offered as the standard of care); *Estate of Curtis v. Fairfax Hosp. Sys., Inc.*, 1990 WL 10030533, at *3 (Va. Cir. Sept. 21, 1990) (ordering compliance with discovery requests because "[t]o the extent the hospital's policies and protocols are reflective of industry custom and even statewide practices, they may be distinguished from the purely private rules held inadmissible by the Supreme Court in *Pullen*").

Admissibility of evidence is not at issue at this stage of the proceedings. Therefore, to the extent Roth may be alleging a cause of action against defendants for failing to follow their own rules, defendants' motion is granted. The court expresses no opinion on the possible discoverability or admissibility of defendants' rules, policies, or procedures for other purposes.

III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Dkt. No. 12) is GRANTED IN PART and DENIED IN PART.

Entered: September 20, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge